IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNILEVER SUPPLY CHAIN, INC.
1 John Street
Clinton, Connecticut 06413,

        Plaintiff,

    v.

JOSHUA W. STEENMEYER d/b/a
PopsicleShirts.com, Inc.
6001 Shining Light Avenue
Las Vegas, Nevada 89139,

        Defendant.

CASE NO. 1:07-cv-03705 (NRB)

JURY TRIAL DEMANDED

**PLAINTIFF UNILEVER SUPPLY CHAIN, INC.'S MEMORANDUM
IN SUPPORT OF A MOTION FOR A TEMPORARY
<u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

J. Kevin Fee (JF-5316)
MORGAN, LEWIS, & BOCKIUS LLP
1111 Pennsylvania Avenue
Washington, DC 20004
Phone: 202-739-3000

Counsel for Plaintiff
Unilever Supply Chain, Inc.

# TABLE OF CONTENTS

STATEMENT OF FACTS ......................................................................................... 2

    I.     Unilever, Its POPSICLE Marks and Products......................................... 2

    II.    Misconduct of Defendant Steenmeyer ................................................... 4

          A.   Registration of the Infringing Domain Names and Use of the
POPSICLE Mark ............................................................................... 4

          B.   Recent Developments Requiring Emergency Injunctive Relief .................. 5

ARGUMENT ...................................................................................................... 6

    I.     Unilever Will Succeed on the Merits of its Cybersquatting Claim ........................ 6

          A.   Unilever's POPSICLE Mark is Distinctive and Famous ............................. 7

          B.   Defendant Steenmeyer's Infringing Domain Names are Confusingly
Similar to and Dilute Unilever's POPSICLE Mark ................................. 7

               1.   Confusing Similarity and Likelihood of Confusion ........................... 7

               2.   The Infringing Domain Names are Likely to Dilute the
POPSICLE Marks ........................................................................ 12

          C.   Defendant Steenmeyer's Registered the Infringing Domain Names
with a Bad Faith Intent to Profit ....................................................... 15

    II.    Plaintiff Will Suffer Irreparable Harm If An Injunction Is Not Issued ............... 16

CONCLUSION .................................................................................................. 17

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNILEVER SUPPLY CHAIN, INC.
1 John Street
Clinton, Connecticut  06413,

        Plaintiff,

    v.

JOSHUA W. STEENMEYER d/b/a
PopsicleShirts.com, Inc.
6001 Shining Light Avenue
Las Vegas, Nevada  89139,

        Defendant.

CASE NO. 1:07-cv-03705 (NRB)

JURY TRIAL DEMANDED

## PLAINTIFF UNILEVER SUPPLY CHAIN, INC.'S MEMORANDUM IN SUPPORT OF A MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Unilever Supply Chain, Inc. ("Unilever") by its attorneys, respectfully submits this memorandum in support of its Motion for a Temporary Restraining Order and Preliminary Injunction against Defendant Joshua W. Steenmeyer d/b/a PopsicleShirts.com, Inc. ("Steenmeyer").

Joshua Steenmeyer misappropriated Unilever's famous, federally registered trademark POPSICLE by using it in two Internet domain names, popsicleshirts.com and popsicletees.com (the "Infringing Domain Names").  On these websites, Steenmeyer uses Unilever's famous POPSICLE mark and a logo design substantially similar to Unilever's famous POPSICLE THE ORIGINAL BRAND logo in interstate commerce in connection with the sale of apparel.  (An image of Unilever's registered mark appears on the left; the logo Defendant is using appears on the right.)

 

As detailed below, Defendant Steenmeyer now threatens to either use the Infringing Domain Names for pornographic websites and/or to redirect these domain names to the fuckoffshirts.com domain name, another domain name owned by Steenmeyer.  Steenmeyer's threatened misuse of Unilever's POPSICLE trademark would inflict grave, irreparable harm upon Unilever and the public interest.  Accordingly, Unilever submits this Motion for a Temporary Restraining Order and Preliminary Injunction and Memorandum in Support.  In support, Unilever relies on its Complaint filed herein and the accompanying declarations of Julio Del Cioppo and J. Kevin Fee.

**STATEMENT OF FACTS**

**I.     Unilever, Its POPSICLE Marks and Products**

Unilever and its predecessors-in-interest have marketed and sold POPSICLE brand frozen confections since 1923 and under the POPSICLE THE ORIGINAL BRAND logo (depicted above, left) since as early as 1988.  (Declaration of Julio Del Cioppo ¶¶ 4, 6) ("Del Cioppo Decl.").  In addition to frozen confections, Unilever also markets, sells and licenses a variety of products under both the POPSICLE mark and the POPSICLE ORIGINAL BRAND logo (collectively, the "POPSICLE Marks").  Unilever has also registered and uses numerous domain names consisting of or containing POPSICLE and SICLE, including the "popsicle.com" and "sicle.com" domain names, for websites that promote its POPSICLE brand products.  (Del Cioppo Decl. ¶ 7).

As a result of Unilever's long-standing, extensive and widespread use, marketing and promotion of its POPSICLE Marks and branded products, Unilever's POPSICLE Marks are widely recognized by the general consuming public as a designation of source for Unilever's frozen confections and other products.  Indeed, Unilever's POPSICLE frozen confections are the number one kids frozen novelty brand in the United States.  (Del Cioppo Decl. ¶ 10).

Unilever owns numerous federal trademark registrations for the POPSICLE Marks in various forms on the Principal Register of the United States Patent and Trademark Office ("PTO"), including the following:

(a)    POPSICLE, Registration Number 219,744 registered on October 26, 1926 for "nonalcoholic, maltless sirups used in the preparation of frozen confections";

(b)    POPSICLE THE ORIGINAL BRAND and Design, Registration Number 1,840,718 registered June 21, 1994 for "frozen confections";

(c)    POPSICLE, Registration Number 2,421,400 registered January 16, 2001 for "frozen confections";

(d)    THE ORIGINAL BRAND POPSICLE and Design, Registration Number 2,651,685 registered November 19, 2002 for "ice cream";

(e)    POPSICLE, Registration Number 2,668,524 registered December 31, 2002 for "ice cream";

(f)    THE ORIGINAL BRAND POPSICLE and Design, Registration Number 2,811,550, registered February 3, 2004 for "lip gloss";

(g)    POPSICLE, Registration Number 2,968,587 registered July 12, 2005 for "bracelets";

(h)    POPSICLE, Registration Number 2,973,936 registered July 19, 2005 for "toothbrushes"; and

(i)    POPSICLE, Registration Number 3,009,533 registered October 25, 2005 for "footwear".

(Declaration of J. Kevin Fee ¶ 3, Exhibit A) ("Fee Decl.").

All of these federal registrations are valid and existing, uncancelled and unrevoked and constitute conclusive evidence of Unilever's exclusive rights in and to the trademarks.  *See* 15

U.S.C. § 1115(b).  Unilever's registrations for the POPSICLE Marks also provide constructive

notice of Unilever's claim of ownership under 15 U.S.C. § 1072.

The POPSICLE Marks are assets of incalculable value as symbols of Unilever's products

and the goodwill associated therewith.  In 2006, Unilever sold more than two billion POPSICLE-

branded products, having a dollar value of approximately $250,000,000.  Similarly, in 2005,

Unilever sold nearly two billion POPSICLE-branded products, having a dollar value of more

than $230,000,000, and in 2004, Unilever sold more than one and three quarter billion

POPSICLE-branded products with a dollar value in excess of $220,000,000.  (Del Cioppo Decl.

¶ 11).

Over the years, Unilever has invested hundreds of millions of dollars in the advertising,

promotion and marketing of the POPSICLE brand products throughout the United States.  (Del

Cioppo Decl. ¶ 1).  In the past three years alone, Unilever has spent over $40,000,000 for media

advertising and promotion of POPSICLE-branded products.  (Del Cioppo Decl. ¶ 12).  Through

such extensive use and registration of the POPSICLE Marks, and because of widespread and

favorable public acceptance and recognition, the POPSICLE Marks have become famous and are

distinctive designations of the source of origin of Unilever's products.

## II.    Misconduct of Defendant Steenmeyer

### A.    Registration of the Infringing Domain Names and Use of the POPSICLE Marks.

Defendant Steenmeyer misappropriated Unilever's famous, federally registered

trademark POPSICLE by using it in two Internet domain names, popsicleshirts.com and

popsicletees.com.  On these websites, Steenmeyer is using Unilever's famous POPSICLE mark

and a logo design substantially similar to Unilever's famous POPSICLE logo in interstate

commerce in connection with the sale of apparel.  (Fee Decl. ¶¶ 5, 6, Exhibits C, D).

**B.      Recent Developments Requiring Emergency Injunctive Relief**

On May 10, 2007, Unilever filed the Complaint in the current action, seeking injunctive relief and damages for trademark infringement, false designation of origin, dilution, unfair competition, and cybersquatting under the laws of the United States, the State of New York and the common law.  In response to this Complaint, counsel for Unilever received a request from Steenmeyer for an extension of time to file an Answer.  Unilever did not agree to such an extension in light of Defendant's on-going misuse of the POPSICLE Marks.  In response, at 7:46 p.m. on May 30, 2007, Defendant left the following voice mail for counsel for Unilever, explicitly threatening to take actions to damage the reputation of Unilever's POPSICLE trademark:

> Hi Kevin, Josh Steenmeyer again.  With regards to Popsicle Shirts and Popsicle Tees.  I'm going to give you one more chance here to give me a ninety day extension on this.  So talk to your client Cantilever [sic].  I will not -- I'm not going to have an attorney.  I going to be representing myself.  I am going to need ninety days, and I'm going to expect your client to basically comply.  If you guys aren't going to work with me, I can't work with you.  So, again, I need you to call me back tomorrow.  If I don't get a call back tomorrow, I will turn Popsicle Tees into a porn site and destroy the reputation of that domain name.
>
> So, again tomorrow I will expect a call at 9:00 west coast time saying Josh we will grant you your ninety day extension.  I will also send it to you, so I want to make sure I get this in writing.  If you guys you say no I will have to put it down that you are unwilling to work with me, therefore I can't justify complying with your wishes.  So, again, Josh Steenmeyer, PopsicleTees.com, it is not Popsicle Shirt or Popsicle Tees incorporated, okay.  I will be representing myself.  If I do not hear back from you by 9:00 western time, I don't want a call any earlier than that, so call me around noon in New York time, east coast time.  If I don't get it, I either turn it into a porn site this weekend or I'll have that domain name forwarded to my other domain name,  Fuckoffshirts.com.  So, make sure I get the extension.  Bye.

(Fee Decl. ¶ 4, Attachment B).

If acted on, Defendant Steenmeyer's threat to either use the Infringing Domain Names for pornographic websites and/or to direct these domain names to the fuckoffshirts.com domain name would inflict grave, irreparable harm upon Unilever and the public interest.

**ARGUMENT**

To obtain a temporary restraining order or preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 65(b), a movant must show:

> (1) that it is subject to irreparable harm; and,
>
> (2) either (a) a probability or likelihood of success on the merits; or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the moving party's favor.

*Hasbro v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988); *see also Bear U.S.A., Inc. v. Kim*, 71 F. Supp. 2d 237, 259 (S.D.N.Y. 1999).

**I.    Unilever Will Succeed on the Merits of its Cybersquatting Claim.**

There is a strong likelihood that Unilever will prevail on the merits of its cybersquatting claim under 15 U.S.C. § 1125(d), as well as the related trademark infringement and dilution claims under federal, state and common law.

In order to prevail on a claim under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), the trademark owner must show that: (1) it owns a distinctive or famous mark; (2) the domain name registrant registers, uses, or traffics in a domain name that is identical to, confusingly similar to or dilutive of the trademark owner's mark; and (3) the domain name registrant had a bad faith intent to profit from the trademark owner's mark. *Lewittes v.*

*Cohen*, 2004 U.S. Dist. LEXIS 9467, at *21 (S.D.N.Y. May 26, 2004); *Spear, Leeds & Kellogg v. Rosado*, 2000 U.S. Dist. LEXIS 3732, at *8 (S.D.N.Y. Mar. 27, 2000).

### A.     Unilever's POPSICLE Marks Are Distinctive and Famous.

Unilever's predecessor-in-interest's first used the POPSICLE mark at least as early as 1923, and Unilever and its predecessors-in-interest have continuously used the POPSICLE mark since that time. Unilever has also used the POPSICLE THE ORIGINAL BRAND logo since 1988. Unilever also owns numerous federal registrations for the POPSICLE Marks. (Fee Decl. ¶ 3, Exhibit A). Unilever's federal registrations for the POPSICLE Marks are valid and existing, uncancelled, and unrevoked and constitute evidence that Unilever's POPSICLE Marks are distinctive and serve to identify the source of Unilever's products in the mind of consumers. Moreover, based on the over eighty years of use and significant sales and advertising of the POPSICLE Marks and POPSICLE brand products, the POPSICLE Marks are famous. (Del Cioppo Decl. ¶¶ 4, 5).

### B.     Defendant Steenmeyer's Infringing Domain Names Are Confusingly Similar to and Likely to Dilute Unilever's POPSICLE Mark.

#### 1.   Confusing Similarity and Likelihood of Confusion

In determining likelihood of confusion, the Second Circuit applies the eight-factor test enunciated in *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). The factors to be weighed are:

1.     strength of the plaintiff's mark;

2.     similarity of the parties' marks;

3.     proximity of the products or services;

4.     likelihood that the senior user will "bridge the gap";

5.     evidence of actual confusion;

6.      defendant's intent in selecting the mark;

7.      quality of defendant's products or services; and

8.      sophistication of the consumers.

*See id.; see also The Sports Authority. Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. l996) (citing *Polaroid* factors).

In cybersquatter cases similar to those in the present case, courts have repeatedly found a likelihood of confusion.  For example, in *Victoria's Cyber Secret Limited Partnership v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339 (S.D. Fla. 2001), the court granted summary judgment in favor of the trademark holder on an ACPA claim.  In that case, the plaintiff sought a declaratory judgment action against the owner of the VICTORIA'S SECRET trademark seeking a declaration of its rights to use domain names such as victoriassexsecret.com.  The court held that the domain name victoriassexsecret.com was confusingly similar to the VICTORIA'S SECRET mark.  The court relied on the fact that the VICTORIA'S SECRET mark was an arbitrary mark. The court also recognized that because both parties were operating on the Internet and were advertising over the Internet, and that this increased the likelihood of confusion.  Finally, the court relied on the bad faith intent of the cybersquatter to support the court's finding of a likelihood of confusion.  The court made this finding despite the fact that there was no evidence of actual confusion and its conclusion that there was not a similarity in the products offered by the two parties.

The facts of the present case are even more compelling and support a finding that the popsicletees.com and popsicleshirts.com domain names are confusingly similar to Unilever's POPSICLE mark.  First, the POPSICLE mark is a very strong, fanciful mark, with no meaning other than that associated with Unilever's POPSICLE-branded products.  Moreover, through

extensive marketing, promotion and sales for over eight decades, the POPSICLE mark has developed widespread nationwide recognition. *See* 3 Callman, *Unfair Competition and Trademarks* § 69 (2d Ed.) ("[A mark] is distinctive if the public has already been educated to accept it as the hallmark of a particular source . . . [A] trademark has the advantage of strength where its owner . . . can point to a long period of time during which his mark was used on a great quantity of articles, as symbolic of his business . . .").

In 2006 alone, Unilever sold more than two billion POPSICLE-branded products, having a dollar value of approximately $250,000,000. Sales in the previous years were similarly high. (Del Cioppo Decl. ¶ 11). The incredible sales of the POPSICLE brand products resulted in substantial goodwill and widespread recognition of the trademark. (Del Cioppo Decl. ¶ 9). Moreover, Unilever has invested hundreds of millions of dollars in the advertising, promotion and marketing for sale of the POPSICLE brand products throughout the United States. (Del Cioppo Decl. ¶ 1). In the past three years alone, Unilever has spent over $40,000,000 for media advertising and promotion of POPSICLE-branded products. (Del Cioppo Decl. ¶ 12). *See Lexington Management Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 280 (S.D.N.Y. 1998) (finding plaintiff's advertising expenditures to be evidence of renown, recognition and strength of plaintiff's mark). Consequently, there can be little doubt that the POPSICLE mark is incredibly strong.

Second, the marks are similar. In fact, Defendant Steenemeyer's Infringing Domain Names contain Unilever's famous, federally registered POPSICLE trademark in its entirety. Moreover, "[i]t is most often the first part of a mark which is most likely to be impressed upon a purchaser and remembered." *See Presto Prods. Inc. v. Nice-Pak Prods. Inc.*, 9 U.S.P.Q. 2d 1895, 1897 (T.T.A.B. 1988). The first word in both Defendants' Infringing Domain Names and

Unilever's mark is identical – POPSICLE. The addition of the descriptive terms shirts and tees (in connection with the offering for sale of shirts and tees) does nothing to distinguish the marks. The descriptive terms tees and shirts have no significance to consumers and are not looked to by consumers for source identification. *See The Morningside Group Ltd. v. Morningside Capital Group, L.L.C*, 182 F.3d 133, 140 (2d Cir. 1999) (finding that only one word stands out as dominant in the marks "The Morningside Group Limited" and "Morningside Capital Group, L.L.C.," and other words do not serve any differentiating role). The only distinctive portion of Steenmeyer's Infringing Domain Names, POPSICLE, is identical to Unilever's famous mark.

The third factor, "proximity of products," also weighs in favor of Unilever. Defendant markets and sells apparel on his popsicleshirts.com and popsicletees.com websites. Although Unilever's POPSICLE mark is primarily associated with its quality frozen confections, Unilever also sold and licensed and currently sells and licenses an array of products and merchandise under the POPSICLE mark, including apparel, jewelry and personal care products. (Del Cioppo Decl. ¶ 5; *see also* Fee Decl. ¶ 3, Exhibit A). Thus, there is a relationship between the products offered under the POPSICLE mark and the subject matter of the websites that have been displayed via the Infringing Domain Names. Furthermore, the apparel sold on Defendant Steenmeyer's websites features humorous jokes, similar to those that appear on the sticks used with the POPSICLE branded-frozen confections, increasing the likelihood of confusion.

Moreover, Defendant Steenmeyer registered the Infringing Domain Names in bad faith. His use of the POPSICLE mark and a logo substantially similar to the POPSICLE THE ORIGINAL BRAND logo (*see* Fee Decl. ¶ 5, 6) is evidence of this intent. The Second Circuit has long recognized that if there is evidence of intentional copying "a second comer will be presumed to have intended to create a confusing similarity of appearance and will be presumed

to have succeeded." *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir. 1980); *see NBA Properties v. Unentertainment Records LLC*, 1999 WL 335147 at *10; *accord Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987).  Defendant's intentional copying of Unilever's trademark is unquestionable.  Moreover, prior to registering the Infringing Domain Names and launching the websites, Defendant was charged with constructive notice of Unilever's registration of the famous POPSICLE Marks.  15 U.S.C. § 1072 ("Registration of a mark on the principal register ... shall be constructive notice of the reigstrant's claim of ownership thereof").

Beyond such constructive notice, however, it is self-evident that Defendant had actual notice of Plaintiff's use of the POPSICLE Marks.  Viewing Unilever's registered POPSICLE THE ORIGINAL BRAND logo next to the logo used by Defendant Steenmeyer on the websites at the Infringing Domain Names (below), there can be no doubt that the Defendant intended to create a confusing similarity of appearance, and thus should be presumed to have succeeded.  *See Perfect Fit Industries*, 618 F.2d at 954.

 

Moreover, in his extortionate demand for additional time to answer the Complaint, Defendant Steenmeyer threatens to use the Infringing Domain Names for pornographic websites and/or redirect the Infringing Domain Names to the fuckoffshirts.com domain name and states that doing so will "destroy the reputation of that domain name," further evidencing his bad faith. (Fee Decl. ¶ 4, Exhibit B.)   Thus, this factor also weighs heavily in Plaintiff's favor.

The additional likelihood of confusion factors also weigh in favor of Unilever. With respect to "bridging the gap," Unilever already offers an array of products and merchandise under its POPSICLE Marks (Del Cioppo Decl. ¶ 13), and there is no reason to believe Unilever may not offer additional items of apparel, including tee shirts. Finally, because Defendant's tee shirts and Unilever's products are relatively inexpensive items, consumers cannot be expected to exercise a high degree of care in purchasing such items. *See RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir. 1979) (finding that products' "modest cost was not conducive to the exercise of careful selectivity by purchasers" and thus increased potential for confusion); *Kraft General Foods v. Allied Old English*, 831 F. Supp. 123, 133 (S.D.N.Y. 1993) (likelihood of confusion substantially increases where parties' respective products were relatively low-priced and thus not subject to close consumer scrutiny). Accordingly, the likelihood of confusion is aggravated.

In sum, the facts of the present case indicate that there is a strong likelihood of confusion.

## 2.  The Infringing Domain Names Are Likely to Dilute the POPSICLE Mark.

Section 43(c) of the Lanham Act protects the owner of a famous mark against dilution of the distinctive quality of that mark. 15 U.S.C. § 1125(c). "Dilution" is defined as the "lessening of the capacity of a famous mark to identify and distinguish goods or services," 15 U.S.C. § 1127 (1998). Dilution can occur through "blurring," *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 42-43 (2d. Cir. 1994), or "tarnishment" of the mark. *See Nabisco, Inc. v. PF Brands, Inc.*, 50 F. Supp. 2d 188, 205 (S.D.N.Y. 1999).

In order to prevail on a federal dilution claim, a plaintiff must demonstrate that:  (1) its mark is famous; (2) that the defendant registered the domain name and/or trade name after the plaintiff's mark became famous; and (3) the defendant's use is likely to dilute the plaintiff's

mark.  *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 477 F.3d 765 (2d Cir. 2007); *Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC*, 2007 U.S. Dist. LEXIS 33301 (S.D.N.Y. May 4, 2007).

The first element requires little discussion.  As set forth above in the context of analyzing the strength of Unilever's mark for likelihood of confusion purposes, the POPSICLE mark is both famous and distinctive.  *See New York State Society of Certified Public Accountants v. Eric Louis Associates, Inc.*, 79 F. Supp. 2d 331, 345 n.8 (S.D.N.Y. 1999) ("the determination of whether a mark is famous and distinctive under Section 43(c) is similar to the analysis for strength of the mark for trademark infringement purposes").  Unilever and its predecessor companies have used the POPSICLE mark in connection with frozen confections for over eighty years.  (Del Cioppo Decl. ¶ 4).  The POPSICLE-branded products have achieved extraordinary popularity, with over two billion POPSICLE brand products sold in 2006 alone, having a dollar value of almost $250,000,000.  (Del Cioppo Decl. ¶ 11).  Moreover, the POPSICLE mark is well-recognized by consumers as a result of advertising, expenditures for which have exceeded $40 million in the last three years alone.  (Del Cioppo Decl. ¶ 13).   Finally, the POPSICLE mark has been registered with the PTO since 1926.  (Fee Decl. ¶ 3).  In these circumstances, there can be no doubt that the POPSICLE mark is famous and was famous before Defendant registered the Infringing Domain Names.

It is also obvious that Steenmeyer's use of the Infringing Domain Names is likely to dilute, and is in fact diluting, the POPSICLE mark.  As stated above, there are two traditional types of dilution – blurring and tarnishment.  *Rhee Bros., Inc. v. Han Ah Reum Corp.*, 178 F. Supp. 2d 525, 529 (D. Md. 2001). "The *sine qua non* of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use." *Hormel Foods Corp. v. Jim*

*Henson Productions, Inc.*, 73 F.3d 497, 507 (2d Cir. 1996).  Blurring occurs when a defendant uses a plaintiff's trademark to identify the defendant's goods or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of plaintiff's product.

In *Victoria's Cyber Secret*, the court faced a dilution claim that was similar to the present case.  In *Victoria's Cyber Secret*, the counterclaim plaintiff, the owner of the VICTORIA'S SECRET marks, brought federal and state dilution claims against the registrant of domain names such as VICTORIASEXSECRET.COM.  The counterclaim defendant admitted that it intended to use the domain names at issue for adult entertainment websites, although it had never actually posted any webpages using the domain names at issue.  Under these circumstances, the court held that the VICTORIA'S SECRET marks were likely to be diluted by both tarnishment and blurring.  The court held that the trademarks would be tarnished as a result of the potential use of the similar domain names in connection with adult entertainment.  In addition, the court held that the VICTORIA'S SECRET marks would be blurred because the counterclaim defendant's potential use of similar domain names would create the possibility that the mark will lose its ability to serve as a unique identifier of the counterclaim plaintiff's mark.

The present case presents an even more compelling dilution claim.  Unlike the counterclaim defendant in *Victoria's Cyber Secret*, Steenmeyer has already made substantial use of the Infringing Domain Names for the sale of apparel.  (Fee Decl. ¶¶ 5, 6, Exhibits C, D).  This use has resulted in the dilution of Unilever's famous POPSICLE mark by blurring. Steenmeyer's threatened use of the Infringing Domain Names for pornographic sites or in connection with his fuckoffshirts.com site presents an extreme example of the threat of dilution by tarnishment.  *See Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463, 466 (E.D. Mich. 2000) ("Courts uniformly have held, and this court agrees, that the use of a famous trademark in a

14

domain name to purvey pornography constitutes dilution.").  Thus, there can be no doubt that Steenmeyer's use of the Infringing Domain Names dilutes and/or is likely to dilute the POPSICLE mark.

Therefore, as set forth above, Unilever has proven each of the elements of a federal dilution claim.  As a result, Unilever is likely to succeed on the merits of its dilution claims.

### C.    Defendant Steenmeyer Registered the Infringing Domain Names with a Bad Faith Intent to Profit.

The ACPA sets forth a nonexhaustive list of factors to consider in determining whether a defendant registered a domain name with a bad faith intent to profit.  The facts in the present case clearly support a finding that Steenmeyer acted with the bad faith intent to profit in registering the Infringing Domain Names.  First, Defendant had no legitimate trademark rights in the POPSICLE mark at the time he registered the Infringing Domain Names.  15 U.S.C. § 1125(d)(1)(B)(i)(I).  Second, the Infringing Domain Names do not consist of the legal name of the party that registered it.  *Id*. § 1125(d)(1)(B)(i)(II).  Third, Defendant is not making a bona fide noncommercial or fair use of the mark, but is in fact using it to lure consumers to websites advertising tee shirts.  *Id*. § 1125(d)(1)(B)(i)(IV).  Fourth, the Defendant has registered other similar domain names containing other third-parties' famous, registered trademarks, including LaffyTaffyTees.com and BazookaTees.com (Fee Decl. ¶ 6), showing a pattern of similar bad faith domain name registrations.  *Id*. § 1125(d)(1)(B)(i)(VII).  Fifth, the POPSICLE mark is distinctive.  *Id*. § 1125(d)(1)(B)(i)(IX).  Finally, and perhaps most importantly, Defendant is using the Infringing Domain Names to divert consumers to his sites by creating a likelihood of confusion.  *Id*. § 1125(d)(1)(B)(i)(V).  The above circumstances are more than sufficient to establish the Defendant's bad faith and render him liable under the ACPA.  *See, e.g.*, *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489 (2d Cir. 2000).

II.    **Plaintiff Will Suffer Irreparable Harm If An Injunction Is Not Issued.**

Once a violation of the Lanham Act has been established, the requisite irreparable harm is established as well.  *See Home Box Office, Inc. v. Showtime/Movie Channel, Inc.*, 832 F.2d 1311, 1314 (2d Cir. 1987).  The inevitable consequences of Lanham Act violations, involving customer confusion and impairment of a plaintiff's reputation and goodwill, are by their very nature not fully compensable by money damages.  *Upjohn Co. v. American Home Products Corp.*, 598 F. Supp. 550, 555 (S.D.N.Y. 1984).

Moreover, Defendant Steenmeyer has expressly threatened to put pornographic material on the Infringing Domain Names or linking the Infringing Domain Names to the fuckoffshirts.com website.  Either of these actions would irreparably harm Unilever.  In addition to being assets of incalculable value as symbols of Unilever's products and the goodwill associated therewith, the POPSICLE Marks are known throughout the country and associated with, among other products, frozen confections for children.  Indeed, as stated above, Unilever's POPSICLE frozen confections are the number one kids frozen novelty brand in the country. (Del Cioppo Decl. ¶ 10).

Association of the POPSICLE Marks with adult content websites – either sites containing pornographic material or the fuckoffshirts.com website (*see* Fee Decl. ¶ 7, Exhibit E) – will cause irreparable damage.  If not enjoined by the Court, Defendant Steenmeyer could inflict great harm – first, on Plaintiffs, by further tarnishing and diluting the goodwill and reputation that the POPSICLE mark has earned over the past 80 years; and also upon the public.  As a direct result, Unilever's business will suffer severe injury to its reputation.

Furthermore, irreparable injury exists where the party seeking the injunction shows that it will "lose control over the reputation of its trademark pending trial."  *Power Test Petroleum*

*Distribs., Inc. v. Calcu Gas. Inc.*, 754 F.2d 91, 95 (2d Cir. 1985).  The "most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods."  4 R. Callmann, *Unfair Competition, Trademarks and Monopolies* § 22.37, at 277 (4th ed. 1995).  Without that control or supervision, Unilever's POPSICLE mark and all that it symbolizes will be held hostage by Defendant, who seeks to exploit goodwill that he had no hand in creating or cultivating.  The trademark laws are designed to remedy precisely this kind of reputational, irreparable harm.

Measured against this threat, Defendant would face no equivalent hardship should an injunction be granted.  Indeed, having deliberately chosen to misappropriate a famous, registered trademark, then threatening to use the famous mark in connection with pornography and/or other tarnishing material, Defendant should not be heard to complain when made to answer for the consequences of his infringement.  *See, e.g., Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.*, 486 F. Supp. 414, 434 (S.D.N.Y. 1980) (weighed against the likelihood of confusion and concomitant harms suffered by plaintiff, the harms to defendants who must have known their use could be challenged successfully were outweighed).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully submits that its motion for a temporary restraining order and preliminary injunction should be granted.

Respectfully submitted,

Dated:  June 1, 2007          By:    /s/  J. Kevin Fee
                                     J. Kevin Fee (JF-5316)
                                     MORGAN, LEWIS, & BOCKIUS LLP
                                     1111 Pennsylvania Avenue
                                     Washington, DC  20004
                                     Phone:  202-739-3000

                                     Counsel for Plaintiff
                                     Unilever Supply Chain, Inc.