IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNILEVER SUPPLY CHAIN, INC.
1 John Street
Clinton, Connecticut 06413,

        Plaintiff,

    v.

JOSHUA W. STEENMEYER d/b/a
PopsicleShirts.com, Inc.
6001 Shining Light Avenue
Las Vegas, Nevada 89139,

        Defendant.

CASE NO. 1:07-cv-03705 (NRB)

JURY TRIAL DEMANDED

## PLAINTIFF UNILEVER SUPPLY CHAIN, INC.'S MEMORANDUM IN SUPPORT OF A MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Southern District of New York, Plaintiff Unilever Supply Chain, Inc. ("Unilever") by its attorneys, respectfully submits this memorandum in support of its Motion for Summary Judgment on all of the claims asserted in the Complaint against Defendant Joshua W. Steenmeyer d/b/a PopsicleShirts.com, Inc. ("Steenmeyer").

Defendant Steenmeyer misappropriated Unilever's famous, federally registered trademark POPSICLE by using it in two Internet domain names, popsicleshirts.com and popsicletees.com (the "Infringing Domain Names"). On these websites, before they were shut down by the domain name registrar, Defendant used Unilever's famous POPSICLE® mark and a logo design substantially similar to Unilever's famous POPSICLE THE ORIGINAL BRAND®

logo in interstate commerce in connection with the sale of apparel.  (An image of Unilever's

registered mark appears on the left; the logo Defendant is using appears on the right.)

 

After the filing of the Complaint, but before the issuance by this Court of the Temporary

Restraining Order and Preliminary Injunction restricting Defendant's use of the Infringing

Domain Names, Defendant registered the domain name fuckoffunilever.info.  In addition to

containing content relating to Unilever and the current lawsuit, the website at

fuckoffunilever.info uses Unilever's famous POPSICLE mark in interstate commerce in

connection with the sale of apparel.

For the reasons detailed below, Unilever is entitled to summary judgment on each of its

claims in the Complaint.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1, Unilever has filed separately a Statement of Undisputed

Material Facts in Support of Its Motion for Summary Judgment, which is incorporated by

reference herein.

**ARGUMENT**

I.    **Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be

rendered forthwith" if it is shown "that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 n.4 (1986).  A genuine dispute of material fact exists if sufficient evidence is presented

such that a reasonable fact finder could decide the question in favor of the non-moving party.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("[T]here is no issue for trial

unless there is sufficient evidence favoring the nonmoving party for the jury to return a verdict

for that party."); *see also Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996)

("[C]onclusory allegations, speculation or conjecture will not avail a party resisting summary

judgment.").

        Once a motion for summary judgment is properly made, the burden shifts to the

nonmoving party to "'set forth specific facts showing that there is a genuine issue for trial.'"

*Anderson*, 477 U.S. at 250 (*quoting* Fed. R. Civ. P. 56(e)).  "The mere existence of some alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment."  *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 334

(S.D.N.Y. 2000) (*citing Anderson*, 477 U.S. at 247).

        As evidenced by the Statement of Undisputed Material Facts and this Memorandum,

there is no genuine issue of material fact at issue, and Defendant's registration of the Infringing

Domain Names and use of the POPSICLE mark and a logo substantially similar to Unilever's

POPSICLE THE ORIGINAL BRAND logo constitute trademark infringement, false designation

of origin, dilution, unfair competition, and cybersquatting under the laws of the United States

and the State of New York and the common law.  Unilever is therefore entitled to summary

judgment on each of its claims in the Complaint.  *See Cartier, Inc. v. Deziner Alternative*

*Sunglasses*, 221 F. Supp. 2d 425, 433 (S.D.N.Y. 2002) ("In a trademark infringement or unfair

competition action the court will grant plaintiff summary judgment if the undisputed evidence

would convince any reasonable juror that the defendant is using a mark in a manner that is likely

to cause confusion regarding plaintiff's mark."); *see also Scholastic, Inc. v. Stouffer*, 221 F.

Supp. 2d 425, 433 (S.D.N.Y. 2002) ("When reasonable minds could not differ as to the import of

the proffered evidence, then summary judgment is proper.").

## II.    Unilever is Entitled to Judgment as a Matter of Law on its Trademark Infringement and Unfair Competition Claims.

The Lanham Act protects trademark owners against confusion as to "affiliation,

connection, or association" in the marketplace. 15 U.S.C. § 1125(a)(1)(A).  To prevail in

trademark infringement and unfair competition claims, a plaintiff must establish that: (1) the

plaintiff owns a valid mark that merits protection, and (2) the defendant's mark results in a

likelihood of confusion between the two marks.[1]  *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360

F.3d 125, 129 (2d Cir. 2004).

### A.    Unilever's Protectable Trademarks

Unilever and its predecessors-in-interest have marketed and sold POPSICLE brand frozen

confections since 1923 and have used the POPSICLE THE ORIGINAL BRAND logo since as

early as 1988.  (Declaration of Julio Del Cioppo in Support of Unilever's Motion for a

Temporary Restraining Order and Preliminary Injunction ("Del Cioppo TRO Decl.") ¶¶ 4, 6).

(These marks are collectively referred to as the "POPSICLE Marks.")  In addition to Unilever's

substantial common law rights obtained from over 80 years of use of the POPSICLE mark and

nearly 20 years of use of the POPSICLE THE ORIGINAL BRAND logo, Unilever owns

---

[1]  Unilever's federal, state and common law trademark infringement and unfair competition claims are analyzed under the same framework.  *See Avon Prods. v. S.C. Johnson & Son, Inc*., 984 F. Supp. 768, 800 (S.D.N.Y. 1997) ("The standards for bringing a claim under § 43(a) of the Lanham Act are substantially the same as those applied to claims brought under New York common law for unfair competition and §§ 349 and 350 of the New York General Business Law.").

numerous federal trademark registrations for the POPSICLE Marks in various forms on the

Principal Register of the United States Patent and Trademark Office, including the following:

(a)    POPSICLE, Registration Number 219,744, registered on October 26, 1926 for "nonalcoholic, maltless sirups used in the preparation of frozen confections";

(b)    POPSICLE THE ORIGINAL BRAND and Design, Registration Number 1,840,718, registered June 21, 1994 for "frozen confections";

(c)    POPSICLE, Registration Number 2,421,400, registered January 16, 2001 for "frozen confections";

(d)    THE ORIGINAL BRAND POPSICLE and Design, Registration Number 2,651,685, registered November 19, 2002 for "ice cream";

(e)    POPSICLE, Registration Number 2,668,524, registered December 31, 2002 for "ice cream";

(f)    THE ORIGINAL BRAND POPSICLE and Design, Registration Number 2,811,550, registered February 3, 2004 for "lip gloss";

(g)    POPSICLE, Registration Number 2,968,587, registered July 12, 2005 for "bracelets";

(h)    POPSICLE, Registration Number 2,973,936, registered July 19, 2005 for "toothbrushes"; and

(i)    POPSICLE, Registration Number 3,009,533, registered October 25, 2005 for "footwear."

(Declaration of J. Kevin Fee in Support of Unilever's Motion for a Temporary Restraining Order

("Fee TRO Decl.") ¶ 3, Exhibit A).  All of these federal registrations are valid and existing,

uncancelled and unrevoked (Declaration of J. Kevin Fee in Support of Unilever's Motion for

Summary Judgment ("Fee SJ Decl.") ¶ 3) and evidence Unilever's exclusive rights in and to the

trademarks.  *See Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d

Cir. 1999) (*citing* 15 U.S.C. § 1115(a)) ("A certificate of registration with the PTO is prima facie

evidence that the mark is registered and valid (*i.e.*, protectible), that the registrant owns the mark,

and that the registrant has the exclusive right to use the mark in commerce.").  Unilever's

registrations for the POPSICLE Marks also provide constructive notice of Unilever's claim of

ownership.  15 U.S.C. § 1072.  Moreover, the registrations for POPSICLE (Registration Number 2,421,400) and POPSICLE THE ORIGINAL BRAND logo (Registration Number 1,840,718) are incontestable, constituting conclusive evidence of Unilever's ownership and the validity of the marks.  (Fee SJ Decl. ¶ 4).  15 U.S.C. §§ 1065, 1115(b).

In conclusion, Unilever owns the POPSICLE Marks.  These marks are valid and merit protection, and Unilever's use of the POPSICLE Marks predates any use upon which Defendant can rely.

### B.     Likelihood of Confusion

The primary issue in trademark infringement and unfair competition actions is whether it is likely that the consuming public will be confused into believing that the defendant is affiliated with the plaintiff's goods or services.  *See Scholastic*, 221 F. Supp. 2d at 434 ("[T]he ultimate question [is] whether consumers are likely to be confused as to the source of the two parties' merchandise.").

The Second Circuit has articulated eight non-exclusive factors by which the likelihood of consumer confusion is measured:  (1) the strength of the mark, (2) the degree of similarity between the two marks, (3) the competitive proximity of the products, (4) actual confusion, (5) the likelihood the plaintiff will bridge the gap, (6) the defendant's good faith in adopting its mark, (7) the quality of the defendant's products, and (8) the sophistication of the purchasers.  *Polaroid Corp. v. Polarad Elecs. Corp*., 287 F.2d 492, 495 (2d Cir. 1961); *see also The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. l996) (citing *Polaroid* factors).  No one factor is dispositive; rather, the "ultimate question" is the "likelihood of confusion as to the source of the product."  *See Brennan's*, 360 F.3d at 130 (*quoting Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir. 1986)).

### 1.     Strength of the POPSICLE Marks

The strength of a mark refers to the degree to which consumers recognize it as a source-identifier.  *See Brennan's,* 360 F.3d at 130.  The strength of a trademark is determined by both "conceptual" strength – the level of a trademark's inherent distinctiveness – and "commercial" strength – the extent to which a trademark owner has used a mark in a manner that increases its marketplace recognition.  *Id.* at 130-31.  As detailed below, Unilever's POPSICLE Marks are exceptionally strong, both conceptually and commercially.

Conceptual Strength:  Conceptual strength results from the degree of a mark's inherent distinctiveness.  *TCPIP Holding Co. v. Haar Communications Inc.*, 244 F.3d 88, 100 (2d Cir. 2001).  In order to determine how inherently distinctive, and thus, in part, how strong a trademark is, courts have developed four categories of trademarks on a spectrum ranging from strongest to weakest:  (1) arbitrary or fanciful, (2) suggestive, (3) descriptive, and (4) generic.  *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976).  Due to their inherent distinctiveness, "arbitrary or fanciful marks enjoy the broadest protection of the trademark laws."  *TCPIP*, 244 F.3d at 94; *see also Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 118 (2d Cir. 1999) (finding that "arbitrary or fanciful marks . . . are entitled to the fullest protection against infringement").

Unilever's POPSICLE Marks are fanciful, with no meaning other than that associated with Unilever and its POPSICLE-branded products.  (Declaration of Julio Del Cioppo in Support of Unilever's Motion for Summary Judgment ("Del Cioppo SJ Decl.") ¶ 9).  *See Gucci America Inc., v. Action Activewear, Inc.*, 759 F. Supp. 1060 (S.D.N.Y. 1991) (finding that marks consisting of the words "POLO" and "RALPH LAUREN" with the representation of a polo horse were fanciful, and, as such, "constitute 'strong' trademarks, which are accorded the

broadest protection against infringement").  Moreover, Unilever's registrations for POPSICLE

(Registration Number 2,421,400) and POPSICLE THE ORIGINAL BRAND logo (Registration

Number 1,840,718) are incontestable and are thus entitled to a presumption of inherent

distinctiveness.  *See Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 497 (2d Cir.

2000); *see also Savin Corp. v. The Savin Group*, 391 F.3d 439, 457 (2d Cir. 2004) ("[A]n

incontestible registered trademark enjoys a conclusive presumption of distinctiveness.")

     Commercial Strength / Secondary Meaning:  Through extensive marketing, promotion

and sales for over eight decades (Del Cioppo TRO Decl. ¶ 4), the POPSICLE mark has become

famous and has developed widespread, nationwide recognition as a source-identifier.  *See* 3

Callman, *Unfair Competition and Trademarks* § 69 (2d Ed.) ("[A mark] is distinctive if the

public has already been educated to accept it as the hallmark of a particular source . . . .  [A]

trademark has the advantage of strength where its owner . . . can point to a long period of time

during which his mark was used on a great quantity of articles, as symbolic of his business . . .").

     Unilever's POPSICLE brand frozen confections are the number one kids' frozen novelty

brand in the United States.  (Del Cioppo TRO Decl. ¶ 10).  In 2006 alone, Unilever sold

approximately 1.7 billion POPSICLE-branded products, having a dollar value of more than

$198,000,000.  (Del Cioppo SJ Decl. ¶ 10).  Sales in the previous years were similarly high.

(*Id.*).  The incredible sales of the POPSICLE brand products have resulted in substantial

goodwill and widespread recognition of the trademark.  (Del Cioppo TRO Decl. ¶ 9).  Moreover,

Unilever has invested hundreds of millions of dollars in the advertising, promotion and

marketing of the POPSICLE-brand products throughout the United States.  (*Id.* ¶ 12).  In the past

three years alone, Unilever has spent over $40,000,000 for media advertising and promotion of

POPSICLE-branded products.  (*Id.* ¶ 12).  *See Lexington Mgmt. Corp. v. Lexington Capital*

*Partners*, 10 F. Supp. 2d 271, 280 (S.D.N.Y. 1998) (finding plaintiff's advertising expenditures to be evidence of renown, recognition and strength of plaintiff's mark).  Consequently, there can be little doubt that the POPSICLE Marks are incredibly strong, both inherently and commercially, and thus entitled to widespread protection.

### 2.      Similarity of the Marks

The second factor in the likelihood of confusion analysis is the similarity of the parties' marks.  This factor considers whether the marks, as they are used in commerce, are similar in sight, sound and meaning, such that consumers are likely to assume they come from the same source or a related or affiliated source.  *See Nikon, Inc. v. Ikon Corp.*, 803 F. Supp. 910, 924 (S.D.N.Y. 1992).  The examination requires the court to "appraise the overall impression created by ... the context in which [the marks] are found."  *See Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 47 (2d Cir. 2000) (*quoting Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998)).

Defendant's POPSICLE SHIRTS mark and his logo design (collectively referred to as the "Popsicle Shirts Designations"), which is substantially similar to Unilever's POPSICLE THE ORIGINAL BRAND logo, as well as the Infringing Domain Names, all contain Unilever's famous, federally registered POPSICLE trademark in its entirety.  Moreover, "[i]t is most often the first part of a mark which is most likely to be impressed upon a purchaser and remembered."  *See Presto Prods. Inc. v. Nice-Pak Prods. Inc.*, 9 U.S.P.Q. 2d 1895, 1897 (T.T.A.B. 1988).  In this case, the first word in both the Popsicle Shirts Designations and the Infringing Domain Names is Unilever's POPSICLE mark.  The addition of the descriptive terms "shirts" and "tees" (in connection with the offering for sale of shirts and tees) does nothing to distinguish the marks, as these descriptive terms have no significance to consumers and are not looked to by consumers

for source identification.  *See The Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 140 (2d Cir. 1999) (finding that only one word stands out as dominant in the marks "The Morningside Group Limited" and "Morningside Capital Group, L.L.C.," and other words do not serve any differentiating role).

Defendant is also using a logo that is substantially similar to Unilever's POPSICLE THE ORIGINAL BRAND logo (depicted below).

 

The most prominent features of both logos are the word POPSICLE, the oval shape, dots around three quarters of the oval, and the multi-colored, tubular shape in the center under the term "Popsicle."  Although Unilever's mark contains the text "The Original Brand" and Defendant's logo contains the word "Shirts," the overall commercial impression of the marks is the same. *See Lane Capital Mgmt.*, 15 F. Supp. 2d at 395 (finding that the overall appearance of the marks is critical, and a mark should be viewed in "its complete form rather than dissect[ed] into its component parts"); *see also Cartier, Inc. v. Deziner Wholesale, L.L.C.*, No. 98 Civ. 4947, 2000 U.S. Dist. LEXIS 4157, at *12 (S.D.N.Y. Apr. 3, 2000) (finding packaging confusingly similar where the "bold and central placement of the [plaintiff's] name on the label . . . gives the impression that [defendant's products] are somehow affiliated with [plaintiff]").

Given that Defendant is using Unilever's POPSICLE mark in its entirety and using a logo with only minor variations to Unilever's famous POPSICLE THE ORIGINAL BRAND logo,

this factor weighs heavily in Unilever's favor. *See Gucci*, 759 F. Supp. at 1064 ("Defendants have used . . . marks virtually indistinguishable from the marks owned and used by plaintiffs. This extreme degree of similarity, particularly when combined with the strength of the plaintiff's marks, weighs heavily in favor of a finding of likelihood of confusion.").

### 3.  Proximity of the Products

The third factor, "proximity of the products," also weighs in favor of Unilever. Defendant uses the Popsicle Shirts Designations to market and sell apparel on his popsicleshirts.com, popsicletees.com and fuckoffunilever.info websites. Unilever's POPSICLE Marks are primarily associated with its high-quality frozen confections, but Unilever has also sold and licensed, and currently sells and licenses, an array of products and merchandise under the POPSICLE Marks, including apparel, jewelry and personal care products. (Del Cioppo SJ Decl. ¶ 5). Unilever's federal trademark registrations for the POPSICLE Marks also cover a wide variety of such merchandising products. (Fee TRO Decl. ¶ 3, Exhibit A). Moreover, in connection with its widespread merchandising and promotional efforts, Unilever offers tee-shirts bearing the POPSICLE Marks. (Del Cioppo SJ Decl. ¶ 6, Exhibit A). Thus, there is a very close proximity between the products offered by Unilever under the POPSICLE Marks and the products Defendant offers for sale using the Popsicle Shirts Designations. Furthermore, the apparel sold on Defendant's websites features jokes, similar to those that appear on the sticks used with the POPSICLE-branded frozen confections, increasing the likelihood of confusion.

In a likelihood of confusion analysis, "[t]he focus is on possible confusion as to source," and "the Second Circuit has indicated that consideration of competitive proximity should be in reference to the strength of the plaintiff's mark and similarity between the two marks." *24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 447 F. Supp. 2d 266, 276 (S.D.N.Y. 2006)

(*citing Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 396 (2d Cir. 1995)); *see also*

*Brennan's*, 360 F.3d at 135 (noting that the "strength analysis can inform [the] proximity

analysis").  As demonstrated above, the POPSICLE Marks are incredibly strong, and this factor

therefore weighs heavily in Unilever's favor.

### 4.    Likelihood that Plaintiff Will "Bridge the Gap"

This factor looks at whether the plaintiff is likely to enter the defendant's area of business

or whether the average consumer would perceive that possibility as likely.  *See 24 Hour Fitness*,

447 F. Supp. 2d at 277 (*citing Federal Express Corp. v. Federal Espresso, Inc.*, 1998 U.S. Dist.

LEXIS 15607, at *16 (N.D.N.Y. Sept. 30, 1998)).  "This factor is designed to protect the senior

user's 'interest in being able to enter a related field at some future time.'"  *W.W.W. Pharm. Co. v.*

*Gillette Co.*, 984 F.2d 567, 574 (2d Cir. 1993) (quoting *Scarves by Vera, Inc. v. Todo Imports*

*Ltd.*, 544 F.2d 1167, 1172 (2d Cir. 1976)).

In the current case, Unilever already offers an array of products and merchandise,

including tee-shirts, under its POPSICLE Marks.  (Del Cioppo TRO Decl. ¶ 13; Del Cioppo SJ

Decl. ¶ 6, Exhibit A).  This factor therefore weighs in Unilever's favor.

### 5.    Defendant's Intent in Adopting the Mark

"If a defendant 'adopted its mark with the intention of capitalizing on plaintiff's

reputation and good will and any confusion between his and the senior user's product,' the court

may find bad faith, and therefore, a likelihood of confusion."  *24 Hour Fitness*, 447 F. Supp. 2d

282 (*quoting Edison Bros. Stores, Inc. v. Cosmair, Inc.*, 651 F. Supp. 1547, 1560 (S.D.N.Y.

1987)).  If a plaintiff's mark is longstanding and the marks are very similar, a defendant must

provide "a reasonable explanation of its choice [in order] to establish lack of intent to deceive."

*Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*, 823 F. Supp. 1077, 1087 (S.D.N.Y. 1993).

Given the similarities of the marks in the current case, there can be no doubt that Defendant knew of Unilever's POPSICLE Marks prior to his use of the Popsicle Shirts Designations and prior to Defendant's registration of the Infringing Domain Names. Nor can there be any doubt that Defendant adopted his marks with the express intention of capitalizing on Unilever's reputation and the goodwill established in Unilever's POPSICLE Marks based on decades of substantial use.

The Second Circuit has long recognized that if there is evidence of intentional copying, "a second comer will be presumed to have intended to create a confusing similarity of appearance and will be presumed to have succeeded." *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir. 1980); *see also Resource Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 132, slip op. at 1903, 1913 (2d Cir. 1991) (recognizing that evidence "that a defendant deliberately engaged in a deceptive commercial practice" raises a presumption of consumer confusion). Defendant's intentional copying of Unilever's trademark is unquestionable. Prior to registering the Infringing Domain Names and the fuckoffunilever.info domain name and launching these websites, Defendant was charged with constructive notice of Unilever's registration of the famous POPSICLE Marks. *See* 15 U.S.C. § 1072 ("Registration of a mark on the principal register . . . shall be constructive notice of the registrant's claim of ownership thereof."). Beyond such constructive notice, however, it is self-evident that Defendant had actual notice of Plaintiff's use of the POPSICLE Marks. Viewing Unilever's registered POPSICLE THE ORIGINAL BRAND logo next to the logo used by Defendant, there can be no doubt that Defendant intended to create a confusing similarity of

appearance, and thus should be presumed to have succeeded. *See Perfect Fit Industries*, 618

F.2d at 954.

 

The Court should also "consider a defendant's conduct after being notified of an

infringement claim." *24 Hour Fitness*, 447 F. Supp. 2d 284 (*citing Int'l Star Class Yacht Racing

Ass'n v. Tommy Hilfiger, U.S.A., Inc*., 80 F.3d 749, 753 (2d Cir. 1996)) (remanding on the issue

of bad faith and finding that the district court gave no consideration to defendant's conduct after

litigation was initiated); *see also V&S Vin & Sprit Aktiebolag v. Absolute Publ'g USA, Inc.*, 05

Civ. 4429, 2005 U.S. Dist. LEXIS 35899, at *25 (S.D.N.Y. Nov. 22, 2005) (citing *Mobil Oil

Corp. v. Pegasus Petroleum Corp*., 818 F.2d 254, 258 (2d Cir. 1987)) (stating that prior

knowledge of another's trademark and continued use after notice from the plaintiff may support

a finding of bad faith).

In the current case, Defendant's activities after receiving notice from Unilever only serve

to further highlight Defendant's bad-faith intent to trade off of the goodwill established in

Unilever's POPSICLE Marks.  First, after receiving Unilever's demand letter in October 2006,

Defendant removed the infringing Popsicle Shirts logo from his websites at the Infringing

Domain Names, but Defendant put the logo back on those websites several weeks later.  (Fee SJ

Decl. ¶ 9).  Then, after Unilever filed the Complaint in this action, Defendant once against

removed the Popsicle Shirts logo, only to replace it with a logo showing an ice pop stick

containing the term "POPSICLESHIRTS.com."  (*See* Fee TRO Decl. ¶ 6, Exhibit D).

Defendant's use of an ice pop stick, an item integral to and associated with Unilever's

POPSICLE-brand products, only evidences further his intention to trade off of the goodwill of

the POPSICLE Marks.

Moreover, Defendant's subsequent registration of the fuckoffunilever.info domain name

and his use of the Popsicle Shirts mark on that website, as well as his threat to use the Infringing

Domain Names for pornographic websites and/or redirect the Infringing Domain Names to the

fuckoffshirts.com domain name, further evidence Defendant's bad faith intent.  (*See* Fee TRO

Decl. ¶ 4, Exhibit B.)  Thus, there can be no doubt that this factor weighs heavily in Plaintiff's

favor.

### 6.    Quality of Defendant's Products and Sophistication of Purchasers

These two factors are related and involve an analysis of the quality of the companies'

products and the care with which consumers purchase those products.  *See Federal Express*,

1998 U.S. Dist. LEXIS 15607, at *52-54.  In the current case, both parties produce relatively

inexpensive items (food items, tee-shirts and related merchandise), and "the lack of marked

difference in quality between goods supports the inference that they emanate from the same

source."  *Centaur Communications, Ltd. v. A/S/M/ Communications, Inc.*, 830 F.2d 1217, 1225

(2d Cir. 1987).

Because Defendant's tee-shirts and Unilever's products are relatively inexpensive items,

consumers cannot be expected to exercise a high degree of care in purchasing such items.  *See*

*RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir. 1979) (finding that products'

"modest cost was not conducive to the exercise of careful selectivity by purchasers" and thus

increased potential for confusion); *Kraft General Foods v. Allied Old English*, 831 F. Supp. 123,

133 (S.D.N.Y. 1993) (finding that likelihood of confusion substantially increases where parties' respective products are relatively low priced and thus not subject to close consumer scrutiny). Accordingly, the likelihood of confusion is substantial, and these factors weigh in Unilever's favor.

### 7.    Actual Confusion

"It is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Lois Sportswear*, 799 F.2d at 875; *see also Harold Ritchie, Inc. v. Chesebrough-Pond's Inc.*, 281 F.2d 755, 761 (2d Cir. 1960) (finding that it is unnecessary for a plaintiff to show evidence of actual confusion, recognizing that such evidence is exceedingly rare). This is particularly true in a case such as this, where Defendant has been marketing his product for a limited period of time and the product has not yet achieved a mass market. *See Generation X Int'l Corp. v. No Excuses Sportswear Ltd.*, 98 Civ. 1935, 1998 U.S. Dist. LEXIS 4693, at *26 (S.D.N.Y. April 3, 1998) ("The absence of actual confusion does not weigh in either party's favor insofar as Defendant's marketing under the 'NO X' logo has been of short duration and limited in scope."); *see also Guinness United Distillers & Vintners B.V. v. Anheuser-Busch, Inc.*, 02 Civ. 0861, 2002 U.S. Dist. LEXIS 12722, at *16 (S.D.N.Y. July 12, 2002) (finding that because sales of the defendant's product had been limited, there "has been little chance for actual confusion"); *Phillip Morris, Inc. v. Star Tobacco*, 879 F. Supp. 379, 386-87 (S.D.N.Y. 1995) ("Where . . . the junior user's product has been on the market a relatively short time, lack of proof of actual confusion does not warrant an inference against the senior user on the issue of probable confusion.").

In the current case, given the limited scope of Defendant's marketplace presence, the actual confusion factor does not favor either party.

### C.    Conclusion on the Likelihood of Success on the Merits of the Infringement Claim

Unilever has established a likelihood of success on the merits of its infringement claims. The indisputable evidence demonstrates that (1) Unilever owns valid trademark rights in the POPSICLE Marks that predate any use that Defendant can claim and (2) a balancing of the eight non-exclusive likelihood of confusion factors above leads to the inevitable conclusion that Defendant's use of the Popsicle Shirts Designations is likely to cause consumer confusion with Unilever's famous POPSICLE Marks in violation of federal and state unfair competition and trademark infringement laws and under the common law.

## III.    Unilever Will Succeed on the Merits of its Trademark Dilution Claim.

Section 43(c) of the Lanham Act protects the owner of a famous mark against dilution of the distinctive quality of that mark. 15 U.S.C. § 1125(c). "Dilution" is defined as the "lessening of the capacity of a famous mark to identify and distinguish goods or services." 15 U.S.C. § 1127 (1998). Dilution can occur through "blurring," *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 42-43 (2d Cir. 1994), or "tarnishment" of the mark. *See Nabisco, Inc. v. PF Brands, Inc.*, 50 F. Supp. 2d 188, 205 (S.D.N.Y. 1999).

In order to prevail on a dilution claim, a plaintiff must demonstrate that: (1) its mark is famous; (2) the defendant used the trademark after the plaintiff's mark became famous; and (3) the defendant's use is likely to dilute the plaintiff's mark. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 477 F.3d 765 (2d Cir. 2007); *Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC*, 2007 U.S. Dist. LEXIS 33301 (S.D.N.Y. May 4, 2007).

The first element requires little discussion.  As detailed above in the context of analyzing the validity and strength of Unilever's marks for likelihood of confusion purposes, the POPSICLE Marks are distinctive and famous.  *See New York State Soc'y of Certified Pub. Accountants v. Eric Louis Assoc., Inc.*, 79 F. Supp. 2d 331, 345 n.8 (S.D.N.Y. 1999) ("[T]he determination of whether a mark is famous and distinctive under Section 43(c) is similar to the analysis for strength of the mark for trademark infringement purposes.").  Unilever and its predecessor companies have used the POPSICLE mark in connection with frozen confections for over eighty years.  (Del Cioppo TRO Decl. ¶ 4).  Unilever has used the POPSICLE THE ORIGINAL BRAND logo since 1988.  (*Id.* ¶ 5).  The POPSICLE-branded products have achieved extraordinary popularity, with approximately 1.7 billion POPSICLE brand products sold in 2006 alone, having a dollar value in excess of $198,000,000 (Del Cioppo SJ Decl. ¶ 10), making Unilever's POPSICLE frozen confections the number one kids' frozen novelty brand in the United States.  (Del Cioppo TRO Decl. ¶ 10).   Moreover, the POPSICLE Marks are well recognized by consumers as a result of advertising and promotion, the expenditures for which have exceeded $40 million in the last three years alone.  (*Id.* ¶ 13).   In these circumstances, there can be no doubt that Unilever's POPSICLE Marks possess both a "significant degree of inherent distinctiveness" and "a high degree of . . . acquired distinctiveness," such that they have become famous, and were famous before Defendant registered the Infringing Domain Names or used the Popsicle Shirts Designations.  *See TCPIP*, 244 F.3d at 97, 98.

It is also obvious that Defendant's use of the Popsicle Shirts Designations and registration of the Infringing Domain Names is likely to dilute, and is in fact diluting, the POPSICLE Marks.  As stated above, there are two traditional types of dilution – blurring and tarnishment.  Blurring occurs "where the defendant uses or modifies the plaintiff's trademark to

identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product," *Deere & Co.*, 41 F.3d at 43 (emphasis omitted), whereas "[t]he *sine qua non* of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use," *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 507 (2d Cir. 1996).

In *Victoria's Cyber Secret Limited Partnership v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339 (S.D. Fla. 2001), the court faced a dilution claim that was similar to the present case. In *Victoria's Cyber Secret*, the counterclaim plaintiff, the owner of the VICTORIA'S SECRET marks, brought federal and state dilution claims against the registrant of domain names such as VICTORIASEXSECRET.COM. The counterclaim defendant admitted that it intended to use the domain names at issue for adult entertainment websites, although it had never actually posted any webpages using the domain names at issue. Under these circumstances, the court held that the VICTORIA'S SECRET marks were likely to be diluted by both tarnishment and blurring. The court held that the trademarks would be tarnished as a result of the potential use of the similar domain names in connection with adult entertainment. In addition, the court held that the VICTORIA'S SECRET marks would be blurred because the counterclaim defendant's potential use of similar domain names would create the possibility that the mark will lose its ability to serve as a unique identifier of the counterclaim plaintiff's mark.

The present case presents an even more compelling dilution claim. Unlike the counterclaim defendant in *Victoria's Cyber Secret*, Defendant has already made substantial use of the Popsicle Shirts Designations on the websites of the Infringing Domain Names (as well as fuckoffunilever.info) for the sale of apparel. (Fee TRO Decl. ¶¶ 5, 6, Exhibits C, D). This use is likely to dilute, and has resulted in the dilution of, Unilever's famous POPSICLE Marks by

blurring.  Moreover, Defendant's threatened use of the Infringing Domain Names for pornographic sites or in connection with his fuckoffshirts.com site presents an extreme example of the threat of dilution by tarnishment.  *See Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463, 466 (E.D. Mich. 2000) ("Courts uniformly have held, and this court agrees, that the use of a famous trademark in a domain name to purvey pornography constitutes dilution.").  Thus, there can be no doubt that Defendant's use of the Popsicle Shirts Designations is likely to dilute, and/or dilutes, Unilever's famous POPSICLE Marks.

**IV.    Unilever Will Succeed on the Merits of its Cybersquatting Claim.**

In order to prevail on a claim under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), the trademark owner must show that: (1) it owns a distinctive or famous mark; (2) the domain name registrant registers, uses, or traffics in a domain name that is identical to, confusingly similar to or dilutive of the trademark owner's mark; and (3) the domain name registrant had a bad-faith intent to profit from the trademark owner's mark.  *Lewittes v. Cohen*, 03 Civ. 189, 2004 U.S. Dist. LEXIS 9467, at *21 (S.D.N.Y. May 26, 2004); *Spear, Leeds & Kellogg v. Rosado*, 99 Civ. 11417, 2000 U.S. Dist. LEXIS 3732, at *8 (S.D.N.Y. Mar.  27, 2000).

As detailed above in the analysis regarding Unilever's likelihood of success on its trademark infringement, unfair competition and dilution claims, Unilever has shown that (1) the POPSICLE Marks are distinctive and famous, and (2) Defendant has registered and used domains names that are confusingly similar to and dilutive of Unilever's POPSICLE Marks.  Unilever has also shown that Defendant had a bad-faith intent to profit from the extensive goodwill associated with Unilever's POPSICLE Marks.

In addition to the discussion above regarding Defendant's bad-faith (Section II.B.5.), the ACPA sets forth a nonexhaustive list of factors to consider in determining whether a defendant registered a domain name with a bad-faith intent to profit. 15 U.S.C. § 1125(d)(1)(B)(i). The facts in the present case clearly support a finding that Defendant acted with the bad faith intent to profit in registering the Infringing Domain Names. First, Defendant had no legitimate trademark rights in the POPSICLE mark at the time he registered the Infringing Domain Names. *Id*. § 1125(d)(1)(B)(i)(I). Second, the Infringing Domain Names do not consist of the legal name of the party that registered it. *Id*. § 1125(d)(1)(B)(i)(II). Third, Defendant is not making a bona fide noncommercial or fair use of the mark, but is in fact using it to lure consumers to websites advertising tee-shirts. *Id*. § 1125(d)(1)(B)(i)(IV). Fourth, Defendant has registered other similar domain names containing other third-parties' famous, registered trademarks, including LaffyTaffyTees.com and BazookaTees.com (Fee TRO Decl. ¶ 6), showing a pattern of similar bad-faith domain name registrations. *Id*. § 1125(d)(1)(B)(i)(VII). Fifth, the POPSICLE mark is distinctive. *Id*. § 1125(d)(1)(B)(i)(IX). Finally, and perhaps most importantly, Defendant is using the Infringing Domain Names to divert consumers to his sites by creating a likelihood of confusion. 15 U.S.C. § 1125(d)(1)(B)(i)(V). The above circumstances are more than sufficient to establish Defendant's bad faith and render him liable under the ACPA. *See Sporty's Farm*, 202 F.3d at 489.

In cases similar to the present case, courts have repeatedly found a violation of the ACPA. For example, in *Victoria's Cyber Secret*, discussed above, the court granted summary judgment in favor of the trademark holder on an ACPA claim. In that case, the plaintiff sought a declaratory judgment action against the owner of the VICTORIA'S SECRET trademark seeking a declaration of its rights to use domain names such as victoriassexsecret.com. The court held

that the domain name victoriassexsecret.com was confusingly similar to the VICTORIA'S

SECRET mark.  The court relied on the fact that the VICTORIA'S SECRET mark was an

arbitrary mark.  The court also recognized that because both parties were operating on the

Internet and were advertising over the Internet, this increased the likelihood of confusion.

Finally, the court relied on the bad-faith intent of the cybersquatter to support the court's finding

of a likelihood of confusion.  The court made this finding despite the fact that there was no

evidence of actual confusion and its conclusion that there was not a similarity in the products

offered by the two parties.

Unilever's POPSICLE Marks are distinctive and famous, and Defendant, in bad faith,

registered and used domain names that are confusingly similar to and dilutive of Unilever's

POPSICLE Marks.  Therefore, the Court should grant summary judgment on the ACPA claim in

favor of Unilever.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff respectfully submits that its Motion for Summary

Judgment should be granted.

Respectfully submitted,

Dated:  August 22, 2007          By:     /s/  J. Kevin Fee
                                         J. Kevin Fee (JF-5316)
                                         MORGAN, LEWIS & BOCKIUS LLP
                                         1111 Pennsylvania Avenue, N.W.
                                         Washington, D.C.  20004
                                         Phone:  202-739-3000

                                         Counsel for Plaintiff
                                         Unilever Supply Chain, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and accurate copy of the foregoing Plaintiff Unilever Supply Chain, Inc.'s Memorandum in Support of a Motion for Summary Judgment was served on Defendant Joshua W. Steenmeyer this 22nd day of August, 2007 via e-mail at joshua@joshuanet.ws and josh@joshuanet.ws and by first-class mail, postage prepaid to:

Joshua W. Steenmeyer
6001 Shining Light Avenue
Las Vegas, Nevada  89139


/s/  J. Kevin Fee