!IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNILEVER SUPPLY CHAIN, INC.<br>1 John Street<br>Clinton, Connecticut  06413,<br><br>        Plaintiff,<br><br>   v.<br><br>JOSHUA W. STEENMEYER d/b/a<br>PopsicleShirts.com, Inc.<br>6001 Shining Light Avenue<br>Las Vegas, Nevada  89139,<br><br>        Defendant. | CASE NO. 1:07-cv-03705 (NRB)<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF UNILEVER SUPPLY CHAIN, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF A MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules for the United States District Court for the Southern District of New York, Plaintiff Unilever Supply Chain, Inc. ("Unilever"), by its attorneys, respectfully submits this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment on all of the claims asserted in the Complaint against Defendant Joshua W. Steenmeyer d/b/a PopsicleShirts.com, Inc. ("Steenmeyer").

**I.      Unilever and the POPSICLE Marks**

1.      Unilever and its predecessors-in-interest have marketed and sold POPSICLE brand frozen confections since 1923 and have used the POPSICLE THE ORIGINAL BRAND logo since as early as 1988.  (Declaration of Julio Del Cioppo in Support of Unilever's Motion for a Temporary Restraining Order and Preliminary Injunction ("Del Cioppo TRO Decl.") ¶¶ 4, 6).

2.   In addition to frozen confections, Unilever also markets, sells and licenses a variety of products under both the POPSICLE mark and the POPSICLE THE ORIGINAL BRAND logo (collectively, the "POPSICLE Marks"). (Declaration of Julio Del Cioppo in Support of Unilever's Motion for Summary Judgment ("Del Cioppo SJ Decl.") ¶ 4).

3.   Unilever has sold and licensed, and currently sells and licenses, an array of products and merchandise under the POPSICLE mark, including apparel, jewelry and personal care products. (Del Cioppo SJ Decl. ¶ 5).

4.   In connection with its merchandising and promotional efforts, Unilever offers tee-shirts bearing the POPSICLE Marks. (Del Cioppo SJ Decl. ¶ 6, Exhibit A).

5.   Unilever has also registered and uses numerous domain names consisting of or containing POPSICLE and SICLE, including the "popsicle.com" and "sicle.com" domain names, for websites that promote its POPSICLE brand products. (Del Cioppo TRO Decl. ¶ 7).

6.   As a result of Unilever's longstanding, extensive and widespread use, marketing and promotion of its POPSICLE Marks and branded products, Unilever's POPSICLE Marks are widely recognized by the general consuming public as a designation of source for Unilever's frozen confections and other products. (*Id.* ¶ 9; Del Cioppo SJ Decl. ¶ 7).

7.   Indeed, Unilever's POPSICLE frozen confections are the number one kids' frozen novelty brand in the United States. (Del Cioppo TRO Decl. ¶ 10).

8.   Unilever also owns numerous federal trademark registrations for the POPSICLE Marks in various forms on the Principal Register of the United States Patent and Trademark Office ("PTO"), including the following:

   (a)   POPSICLE, Registration Number 219,744, registered on October 26, 1926 for "nonalcoholic, maltless sirups used in the preparation of frozen confections";

  (b) POPSICLE THE ORIGINAL BRAND and Design, Registration Number 1,840,718, registered June 21, 1994 for "frozen confections";

  (c) POPSICLE, Registration Number 2,421,400, registered January 16, 2001 for "frozen confections";

  (d) THE ORIGINAL BRAND POPSICLE and Design, Registration Number 2,651,685, registered November 19, 2002 for "ice cream";

  (e) POPSICLE, Registration Number 2,668,524, registered December 31, 2002 for "ice cream";

  (f) THE ORIGINAL BRAND POPSICLE and Design, Registration Number 2,811,550, registered February 3, 2004 for "lip gloss";

  (g) POPSICLE, Registration Number 2,968,587, registered July 12, 2005 for "bracelets";

  (h) POPSICLE, Registration Number 2,973,936, registered July 19, 2005 for "toothbrushes"; and

  (i) POPSICLE, Registration Number 3,009,533, registered October 25, 2005 for "footwear."

(Declaration of J. Kevin Fee in Support of Unilever's Motion for a Temporary Restraining Order ("Fee TRO Decl.") ¶ 3, Exhibit A).

  9. All of these federal registrations are valid and existing, uncancelled and unrevoked and evidence Unilever's exclusive rights in and to the trademarks. (Declaration of J. Kevin Fee in Support of Unilever's Motion for Summary Judgment ("Fee SJ Decl.") ¶ 3).

  10. Unilever's registrations for POPSICLE (Registration Number 2,421,400) and POPSICLE THE ORIGINAL BRAND logo (Registration Number 1,840,718) are incontestable pursuant to 15 U.S.C. § 1065. (*Id*. ¶ 5).

  11. The term POPSICLE has no meaning other than that associated with Unilever and its POPSICLE-branded products. (Del Cioppo SJ Decl. ¶ 9).

  12. The POPSICLE Marks are assets of incalculable value as symbols of Unilever's products and the goodwill associated therewith. (*Id*. ¶ 8).

13. In 2006, Unilever sold approximately 1.7 billion POPSICLE-branded products, having a dollar value of over $198,000,000. (*Id.* ¶ 10).

14. Similarly, in 2005, Unilever sold approximately 1.6 billion POPSICLE-branded products, having a dollar value of nearly $192,000,000, and in 2004, Unilever sold over 1.4 billion POPSICLE-branded products with a dollar value in excess of $178,000,000. (*Id.*).

15. Over the years, Unilever has invested hundreds of millions of dollars in the advertising, promotion and marketing of the POPSICLE brand products throughout the United States. (Del Cioppo TRO Decl. ¶ 12).

16. In the past three years alone, Unilever has spent over $40,000,000 for media advertising and promotion of its POPSICLE-branded products. (*Id.* ¶ 13).

17. Through such extensive use and registration of the POPSICLE Marks, and because of widespread and favorable public acceptance and recognition, the POPSICLE Marks have become famous and are distinctive designations of the source of origin of Unilever's products. (Del Cioppo SJ Decl. ¶ 7).

**II.     Misconduct of Defendant Steenmeyer**

   **A.     Registration of the Infringing Domain Names and Use of the POPSICLE Marks**

18. Defendant Steenmeyer is using Unilever's famous, federally registered trademark POPSICLE in two Internet domain names, popsicleshirts.com and popsicletees.com, which Defendant registered with the domain name registrar GoDaddy. (Fee SJ Decl. ¶ 5, Exhibit A).

19. On these websites, Defendant has used Unilever's famous POPSICLE mark and a logo design substantially similar to Unilever's famous POPSICLE THE ORIGINAL BRAND logo in interstate commerce in connection with the sale of apparel. (Fee TRO Decl. ¶¶ 5, 6,

Exhibits C, D).  (Unilever's registered trademark is depicted on the left.  Defendant's logo is depicted on the right.)

 

20. After receiving Unilever's demand letter in October 2006, Defendant removed the infringing Popsicle Shirts logo from his websites at popsicleshirts.com and popsicletees.com, but Defendant put the logo back on those websites several weeks later.  (Fee SJ Decl. ¶ 9).

21. Following the filing of the current Complaint on May 10, 2007, Defendant removed the initial Popsicle Shirts logo (depicted above, right) and replaced it with a logo showing an ice pop stick containing the term "POPSICLESHIRTS.com." (Fee TRO Decl. ¶ 6, Exhibit D).

22. Following the filing of the Complaint in the current action, Defendant registered the domain name fuckoffunilever.info with the domain name registrar GoDaddy.  (Fee SJ Decl. ¶ 6, Exhibit B).

23. Defendant is using Unilever's POPSICLE trademark to sell apparel on his website at fuckoffunilever.info.  (Fee SJ Decl. ¶ 7, Exhibit C).

24. Defendant's use of the POPSICLE Marks comes over 80 years after Unilever's use of the POPSICLE mark and nearly 20 years after Unilever's use of the POPSICLE logo began, and well after the POPSICLE Marks became famous.  (Fee SJ Decl. ¶ 8).

**B.    Defendant's Threatening Actions Requiring Emergency Injunctive Relief**

25.    In response to the filing of the Complaint, counsel for Unilever received a request from Defendant for an extension of time to file an Answer. (Fee TRO Decl. ¶ 4, Exhibit B).

26.    In response to Unilever's refusal to grant such an extension in light of Defendant's continuing use of the POPSICLE Marks, Defendant left the following voicemail at 7:46 p.m. EST on May 30, 2007 for counsel for Unilever, explicitly threatening to take actions to damage the reputation of Unilever's POPSICLE trademark:

> Hi Kevin, Josh Steenmeyer again. With regards to Popsicle Shirts and Popsicle Tees. I'm going to give you one more chance here to give me a ninety day extension on this. So talk to your client Cantilever [sic]. I will not -- I'm not going to have an attorney. I going to be representing myself. I am going to need ninety days, and I'm going to expect your client to basically comply. If you guys aren't going to work with me, I can't work with you. So, again, I need you to call me back tomorrow. If I don't get a call back tomorrow, I will turn Popsicle Tees into a porn site and destroy the reputation of that domain name.
>
> So, again tomorrow I will expect a call at 9:00 west coast time saying Josh we will grant you your ninety day extension. I will also send it to you, so I want to make sure I get this in writing. If you guys you say no I will have to put it down that you are unwilling to work with me, therefore I can't justify complying with your wishes. So, again, Josh Steenmeyer, PopsicleTees.com, it is not Popsicle Shirt or Popsicle Tees incorporated, okay. I will be representing myself. If I do not hear back from you by 9:00 western time, I don't want a call any earlier than that, so call me around noon in New York time, east coast time. If I don't get it, I either turn it into a porn site this weekend or I'll have that domain name forwarded to my other domain name, Fuckoffshirts.com. So, make sure I get the extension. Bye.

(*Id.*).

27.    In response, Unilever requested and the Court granted a Temporary Restraining Order and Preliminary Injunction enjoining Defendant Steenmeyer from using the Infringing Domain Names for pornographic websites and/or directing those domain names to the

fuckoffshirts.com domain name.   (Unilever's Motion for a Temporary Restraining Order and Preliminary Injunction filed June 1, 2007; Order issued June 1, 2007; Order issued June 20, 2007).

Respectfully submitted,

Dated:  August 22, 2007          By:    /s/  J. Kevin Fee
                                        J. Kevin Fee (JF-5316)
                                        MORGAN, LEWIS & BOCKIUS LLP
                                        1111 Pennsylvania Avenue, N.W.
                                        Washington, D.C.  20004
                                        Phone:  202-739-3000

                                        Counsel for Plaintiff
                                        Unilever Supply Chain, Inc.

## **CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing Plaintiff Unilever Supply Chain, Inc.'s Statement of Undisputed Material Facts in Support of a Motion for Summary Judgment was served on Defendant Joshua W. Steenmeyer this 22nd day of August, 2007 via e-mail at joshua@joshuanet.ws and josh@joshuanet.ws and by first-class mail, postage prepaid to:

Joshua W. Steenmeyer
6001 Shining Light Avenue
Las Vegas, Nevada  89139

/s/  J. Kevin Fee